Opinion of the court delivered by
Judge Whyte.
A scire facias issued from the county" court of Williamson county, (tested the first Monday of January 1823,) in the name of Erwin, Williams and M’Laughlin for the use of Charlton and White; reciting, that before that time, the said Erwin, M’Laughlin & Co. for the use of said Charlton and White,had recovered'a judgment for $1515 2, damages,besides costs, against the defendants, Rutherford and Murray, Executors of Francis P, Murray deceased, to be *170 levied of the goods and chattels which were of the said Francis at the time of his death, in their hands to be administered; that an execution issued upon the said judg-tested the first Monday in July 1821, and which the sheriff returned on the first Monday in October, on which execution were these endorsements; came to hand Sept. 14, 1821. Wm. Philips sheriff. No property found, Wm. Philips sheriff. But on said execution was the following credit, “received from Robert Murray two hundred and forty dollars.” The scire facias then suggests a de-vastavit by the defendants; and calls upon them to shew cause why execution against their own proper goods &c. should not issue. This scire facias was endorsed, issued 7th February 1823 — came to hand same day issued. Wm. Anthony, sheriff by Wm. B. M’Clellen, deputy sheriff. Whereupon, an alias scire facias, reciting the first writ, and tested 1st Monday in April 1823, issued, on which sci. fa. was endorsed, issued 16th may 1823, came to hand the 17th May 1823, Wm. Anthony, sheriff, by Wm. B. M’-Clellen, deputy sheriff. At the July term of the county court of Williamson county, the defendants pleaded, 1st payment of the debt, 2d payment of the debt, before the issuing the.scire facias — and issue thereon — verdict in favor of the defendants, judgment thereon, that the defendants go hence without day and recover their costs against the plaintiffs, appeal to the circuit court where the cause was tried February 1826, and verdict and judgment for defendants. Motion for new trial, which was overruled, and an appeal in error to this court.
By the bill of exceptions, it is stated by a witness who knew Charlton well, and had been considerably conversant with his business from about the date of the transaction with Erwin, M’Laughlin & Co. whereby the said Charlton acquired an interest in a claim against the estate of Francis Murray deceased, and upon which claim the original suit was brought in the name of Erwin, M’-Laughlin & Co. for the use of the said Charlton and White, “that he never knew of any partnership existing between the said Charlton and White, nor did he know *171 there was any connexion whatever, between the aforesaid claim of the said Charlton and that of the said White.” The various endorsements upon the original executions which were issued upon the judgment of Erwin, M’-Laughlin & Co. to the use of the said Charlton and White, against Rutherford and Murray, Ex’rs. of Francis Murray deceased, were read to the jury; the endorsements are as follows; upon the first execution, to wit, “issued 16th July 1821, came to hand Sept. 14th 1821, Wm. Philips, sheriff. No property found, Wm. Philips,sheriff.” Upon said 1st execution there was also an endorsement, that “notes current in the Bank of the State of Tennessee, or its branches, or the Nashville Bank, or its branches, will be received in satisfaction of the within;” the last mentioned endorsement, is subscribed with the name of Edmund Charlton, which signature was admitted to be in thé proper hand writing of the said Edmund Charlton. Upon said 1st execution there is also a receipt in the following words: “Received of Robert Murray $30 on account of the within execution, July 18,1821,” the body of which receipt is in an unknown hand writing, and the same is subscribed with the name of Edmund Charlton, which signature was admitted to be the proper hand writing of the said Edmund Charlton — Upon the said 1st execution was also a receipt in the following words: “Received Sept- 14th of Robert Murray $210 on the within execution, but this is not to be considered as any acknowledgment of assets in said Murray’s hands.” This receipt is signed Eli White, for Joseph White, which signature was admitted to have been put there by the thority of Joseph White, and the money specified in said receipt to have been received by him the said Joseph White. Upon the back of the said alias execution there were the following endorsements: “Issued 4th January 1822, came to hand 14th January. 1822. Received James Rutherford, one of the ex’rs. of F. Murray dec’d. $14,84, the costs hereon endorsed; no property found satisfy the principal of the within execution. Signed thaniel Peoples, Coroner.” Upon the back of said alias *172 execution, there is also a memorandum in the hand writing of the clerk of Williamson county court, placed immediately under the last mentioned receipt in the follow-words: “Received 7th February 1822, of R. Murray and receipt given him for it;” upon the hack of said alias execution there is also a copy of the endorsement upon the first, relative to the satisfaction in current banknotes, which endorsement is signed by Joseph White, which signature is admitted to be the proper hand writing of the said Joseph White. There is also upon said alias execution an endorsement by the clerk of Williamson county court, that said alias execution is entitled to a credit to the amount of the receipts upon the said first execution.
Upon said alias execution there is also an endorsement in the following words: “Received, Vernon, January 16, 1822, of R. Murray, one of the Ex’rs. of F. Murray, on the within execution $1316 84, in full of the within execution; (signed) Joseph White, Edmund Charlton, by Joseph White, both of which signatures are admitted to be in the proper hand writing of the said White; said last mentioned receipt is attested by John Rutherford as a subscribing witness.
It was requested by'plaintiffs’counsel, that the court would charge the jury, that the payment by defendant to White, would not discharge the debt without its being proved by evidence, that White had an express authority to receive the same, which the court-refused, and charged the jury, that the suit being in the name of the plaintiffs, for the -use of Chárlíon and White, the defendant had á right to pay the amount of judgment to .'them, and-that a payment to, or discharge from them, or receipt, would be a complete satisfaction of the debt; and as the suit was brought for the use of Charlton and Whiterupon a debt assigned to them jointly, without distinguishing the proportion each was entitled to,, that they would be considered, partners in the transaction; and a payment of a part, or the whole of the debt, by either, woüld'be a good payment, without producing any express authority for that purpose» To this charge the counsel excepted.
*173 The principal error assigned, and relied upon in this esse, is, that the court below erred in not charging the jury, that the payments made by Rutherford and ray to White, were without authority from Charlton, and done in their own wrong.
The original suit being brought by Erwin, M’Laugblin & Co. for the use of Charlton and White, is an admission on the record that Erwin, M’Laughlin & Co,, are trustees for Charlton and White, and that the beneficial interest in the thing claimed, the subject matter of the suit,belongs to the latter. This is not disputed by the counsel of the plaintiffs in error, but it is contended by them, that the quantum of interest in the recovery by them, Charlton and White, is different, and.several, not joint, and that it was incumbent upon the defendants,Rutherford and Murray, the Ex’rs. to take notice of this in satisfying the judgment recovered, or, if disregarding the proportion of interest, to be warranted in a payment made to the one, an express authority.from the other to receive, must have been given. This argument assumes the position', that the interests of Charlton and White in the claim, debt and judgment recovered, were separate', and not joint; ■and is attempted to be founded upon, and supported by the parol testimony, and the execution, and endorsements upon them set forth in thebill of exceptions. The substance of the parol testimony is, that the witness knew Charlton well, and had been considerably conversant with his business from about the date oí the transaction with Erwin, M’Laughlin & Co, whereby Charlton acquired an interest in the claim, upon which .the suit was Brought in their name for the use of Charlton and White; that he never knew any partnership between Charlton and White, or that there was any connexion between the claim Of Charl-ton, and that of White. This testimony is only negative as to the knowledge of the witness respecting the matter spoken of, and is inconclusive; — but let it be admitted that no partnership existed between Charlton and White, at the time of the acquisition of their interest in the debt, or claim, it varies not the case, it appears upon the bill *174 of exceptipns that the original suit was brought for the use of Charlton and White, upon a debt assigned to them jointly, without distinguishing any several, or distinct proportion to each, or either of them; by such transfer Charl-ton and White are joint tenants of the debt. See Litt. s. 281. 4 Comyn’s Dig. 48, which says,“so if aman gives an horse, or other goods and chattels, to divers persons, they are joint tenants of them, and the survivor shall have the whole;” again in sec. 282 Littleton says; “though they are choses in action, as if a man makes an obligation, covenant or other contract to divers, they arc joint tenants of the debtor duty.” Charlton and White being joint tenants of the debt or duty liquidated by the judgment, either had a right to release it. See 4 Coke 25, Rud-dock’s case. The same principle is recognized in 3 Johns. Rep. 70, case of Piersons vs. Hooker, where Kent C. J. in delivering the opinion of the court, says, “it is a general principle of law, that when two have a joint personal interest, the release of one bars the other.” The doctrine of these or similar cases was admitted on the argument, but denied to be applicable to Charlton and White, who, although they were parties having the beneficial interest, yet that interest is only in equity, which a court of law ought not to notice, that the legal right here is only to be noticed, which in the present case is Erwin, M’-Laughlin & Co. that a release, acquittance or acknowledgment of satisfaction of the debt, duty, or judgment, by one of them, would have been available to the defendants, Rutherford and Murray, and would have been authorized by the book cited. It is correct that anciently such was the law, and it was even carried to a greater - degree of strictness; for in the case where the sheriffhad levied the money of the defendant, and even delivered it to the plaintiff, yet as he had not paid it into court, the plaintiff was not estopped from having a new execution; because' says the books, the money being by the writ to be paid into court, the private payment is no satisfaction, for the writ is not obeyed. See Gilbert on executions 16,17. But the law of this case has been changed above a century ago: *175 See 2 Ba. Abr. 716 — Note d; where it is laid down, if the sheriff pays the money to the party, it is good, and the court will allow of such return because the plaintiff is thereby satisfied, although the writ run, ila quod habeat coram nobis, cites 2 Shower 87. Still greater changes have taken place since that case in Shower, founded on the sound principle on which that decision was made, to wit, the satisfaction of the plaintiff; — courts of law being now governed by what constitutes a satisfaction to the real plaintiff in interest, not to a nominal plaintiff. Hence, for a century and a half, the maxim oí the common law that a right of action cannot be transferred, has been but badly observed, and in courts of law the equitable interest of the assignee of a chose in action seems to have been recognized as far back as the year 1681; when we find it said by one of the judges, that if an as-signee of a chose, in action have an equity, that equity should be no exile to the courts of law. See Chitty on bills 9. Since that time the books shew, in a number of cases, that courts of law have taken notice of the assignments of choses in action, and of giving effect to them, so that little now remains but an adherence to the formal objection, that the action should be brought in the name of the assignor, Chitty on bills 10. A learned judge speaking on this subject says, “after these cases we may venture to say the maxim was a bad one, and that it proceeded on a foundation which fails; but still it must be admitted, that though the courts of law have gone the length of taking notice of the assignments of choses in action, and of acting upon them, yet in many cases they have adhered to the formal objection, that the action shall be brought in the name of the assignor, and not in the name of the assignee. I see no use or convenience m preserving that shadow when the substance is gone, and that it is merely a shadow is apparent from the later cases, in which the courts have taken care that it shall never work injustice, per Buller J. 4 Term 341. Later cases both in England and in the United States support these observations of this learned judge, and courts of law *176 will now give that protection to the assignees of an equvty, which anciently, could only have been had by application to a court of equity! Thus it appearing in the present case upon the record, that the plaintiffs, Erwin, M’-Laughlin & Co. were only trustees, or mere nominal plaintiffs for Charlton and White, who had the beneficial or equitable interest, the defendants were not only justifiable, but compellable to pay them, Charlton and White, the judgment; and if they had paid Erwin, M’Laughlin & Co. after the notice furnished by the record of the beneficial interest in Charlton and White, it would have been a payment in their own wrong, and they would have been compellable to pay over again to the rightful party, the assignees. The cause was therefore rightfully decided by the judge and jury, in establishing the payment and satisfaction of the judgment, appearing on the execution by endorsement, to he a valid payment and satisfaction. If the plaintiffs, Erwin, M’Laughlin & Co. .had, instead of proceeding by scire facias,procured a levy on the property of the testator in the hands of the defendants, the executors, after the payment and satisfaction made to Charlton and White, soappearing by the endorsement on the executions, the court of law would have relieved them on motion, by quashing the execution, for a court of equity would have protected them in the payment made to the assignees. This is proved by the case of Pritchard vs. Langher, 2 Vern. 197, 1 Eq. Ca. Abr. 332, S. c, where A. lends to her brother-in-law B. £100, and takes bond for it in the name of J. S. and upon some difference between A and B — A puts the bond in suit in the name of J. S. her trustee: B, to avoid expense, confesses judgment, and afterwards pays the money to J. S. the trustee; he shall be obliged to pay it over again, having notice of the trust. See also 2 Vern. 539, (Baldwin vs. Billingsly,) where the same principle is recognized.
Let the judgment of the circuit court he affirmed.